**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Katherine L. Knoll,<br><br>    Plaintiff,<br><br>vs.<br><br>BSI America Professional Services Incorporated, et al.,<br><br>    Defendants. | No. CV-23-02448-PHX-SPL<br><br>**ORDER** |

Before the Court are Defendants' Motion for Summary Judgment (Doc. 75) and Plaintiff's Motion for Partial Summary Judgment (Doc. 77). Also pending before the Court is Plaintiff's Request that the Court disregard arguments and evidence submitted for the first time in Defendants' Reply (Doc. 90). The Motions are fully briefed and ripe for review. (*See* Docs. 75, 84, 88, 77, 86, 89, 90). The Court now rules as follows.[1]

**I. BACKGROUND**

Plaintiff Katherine Knoll brings claims against Defendants BSI America Professional Services, Inc. and BSI America, Inc. ("Defendants") for violations of the Americans with Disabilities Act ("ADA") for denial of reasonable accommodations, discriminatory termination, and coercion, intimidation, threats, and interference. (Doc. 1 at 12–14). Plaintiff was an employee of Defendant BSI America Professional Services, Inc.

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motion is suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

("Defendant BSI" or "BSI") beginning on March 17, 2014.[2] (Doc. 76 at 2, ¶ 2; Doc. 78 at 2, ¶ 1). Plaintiff suffers from several impairments, including Hypermobile Ehlers-Danlos Syndrome, Postural Orthostatic Tachycardia Syndrome, and spinal disc herniations. (Doc. 76 at 3, ¶ 10; Doc. 78 at 3, ¶ 12). These conditions cause Plaintiff substantial limitations in activities and result in pain. (Doc. 76 at 3; Doc. 78 at 3–4). Specifically, "[s]itting in a chair compresses Plaintiff's spine and triggers Plaintiff's back pain, which gets progressive[ly] worse." (Doc. 78 at 4, ¶ 15).

In December 2014, Plaintiff made a verbal request to her manager, Shelley Sjerven, for a hybrid work schedule that would include part-time telework. (Doc. 76 at 3, ¶ 15; Doc. 78 at 6, ¶ 31). Ms. Sjerven denied the request. (Doc. 76 at 4, ¶¶ 16–17). Plaintiff made a second accommodations request in March 2015, asking for "part-time telework and an ergonomic chair for the periods of time that she would be in the office, or in the alternative, a zero-gravity chair for her office." (Doc. 78 at 6, ¶ 35). In response to the request, Defendant BSI provided Plaintiff with a form that could be used for FMLA leave requests, but Plaintiff submitted a different form that she found on the internet. (Doc. 76 at 5, ¶¶ 29–30; Doc. 78 at 6, ¶ 36). In April 2015, Defendant BSI purchased Plaintiff an ergonomic chair for her office that she selected, but it arrived without the lumbar support component. (Doc. 76 at 5, ¶ 32; Doc. 78 at 8, ¶ 49). Defendant BSI also reached out to Plaintiff's medical provider to request more information about her conditions. (Doc. 78 at 7–8, ¶¶ 44–46).

On May 11, 2015, Plaintiff requested leave under the Family and Medical Leave Act ("FMLA") due to complications from a medical procedure, and she was approved for two weeks of leave. (Doc. 76 at 7, ¶ 39, 41; Doc. 78 at 9, ¶ 57). Plaintiff's medical provider

---

[2] Defendants assert that BSI America, Inc. did not employ Plaintiff. (Doc. 76 at 2). BSI America is "a separate, sister corporation." (Doc. 78 at 2, ¶ 4). In Plaintiff's Response to Defendants' Motion for Summary Judgment, she contends that Defendants were "joint employers" and "genuine issues of fact exist on the question of whether Defendants are jointly and severally liable to Plaintiff for ADA violations." (Doc. 84 at 16). However, it does not appear that either party has raised this issue on summary judgment. (*See* Docs. 75, 77). Therefore, the Court will not make any determinations regarding Defendants' liability as Plaintiff's employer.

2

requested an extension of FMLA leave until June 22, 2015, which was also approved. (Doc. 78 at 9, ¶ 58). Plaintiff requested two more extensions, and her FMLA leave was extended until July 31, 2015, totaling to twelve weeks of leave. (Doc. 76 at 8). While Plaintiff was on leave, Plaintiff's position was eliminated due to a "financially-driven restructure" within BSI. (Doc. 76 at 8, ¶ 8). Defendant BSI created a new position "specifically for Plaintiff to fill upon her return to work." (*Id.* at 9, ¶ 56).

On July 29, 2015, Plaintiff was informed that her FMLA leave had been exhausted, and she was expected to return to work on August 3, 2015. (Doc. 76 at 9, ¶ 54; Doc. 78 at 10, ¶ 64). Plaintiff questioned if she would be terminated if she did not return to work, and Ms. Hueseman, a human resources ("HR") business partner, told Plaintiff that she would have to see "what options we will have." (Doc. 78 at 10, ¶¶ 65–66; Doc. 76 at 10, ¶ 58). On July 31, 2015, Plaintiff's medical provider requested that Plaintiff's leave be extended until October 1, 2015. (Doc. 78 at 10, ¶ 67). When Plaintiff did not return to work, she was terminated effective August 4, 2015. (Doc. 76 at 10, ¶ 62).

Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on December 23, 2015. (Doc. 78 at 11, ¶ 80). On September 22, 2022, the EEOC issued a reasonable cause determination letter, and on August 25, 2023, the EEOC sent a notice of right to sue, which Plaintiff received on September 5, 2023. (Doc. 76 at 11, ¶ 66–67; Doc. 78 at 11–12, ¶¶ 81–82). On November 22, 2023, Plaintiff filed suit, bringing two claims against Defendants under the ADA: (1) "Denial of Reasonable Accommodations and Discriminatory Termination," and (2) "Coercion, Intimidation[,] Threats and Interference." (Doc. 1 at 12–14). Now, Defendants move for summary judgment, arguing that Plaintiff's claims are "barred by the doctrine of laches due to [Plaintiff's] unreasonable and highly prejudicial delay" and that there is no genuine dispute of material fact as to her discrimination and retaliation claims. (*See* Doc. 75). Plaintiff filed a Response (Doc. 84) and submitted a cross-motion for partial summary judgment on liability for Plaintiff's claims for discrimination and retaliation under the ADA. (Doc. 77).

//

## II. LEGAL STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party can satisfy its burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* When considering a motion for summary judgment, a court must view the factual record and draw all reasonable inferences in a light most favorable to the nonmoving party. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002). When parties file cross-motions for summary judgment, the court must review each motion "separately, giving the nonmoving party for each motion the benefit of all reasonable inferences." *Eat Right Foods Ltd. v. Whole Foods Mkt., Inc.*, 880 F.3d 1109, 1117 n.4 (9th Cir. 2018).

## III. DISCUSSION

Defendants move for summary judgment first on the issue of laches, arguing that Plaintiff's entire complaint should be dismissed because of unreasonable, prejudicial delay. (Doc. 75-1 at 5–11). Next, Defendants and Plaintiff both move for summary judgment on whether 1) Plaintiff's accommodations requests were granted or if Defendants engaged in the required interactive process and 2) whether Plaintiff was terminated because of her extended leave request. (Doc. 75-1 at 11–17; Doc. 77 at 9–17).

**A. Laches**

First, Defendants argue that Plaintiff's Complaint should be dismissed in its entirety because Plaintiff's claims are barred by laches. (Doc. 75-1 at 6–8). Defendants assert that Plaintiff "filed her EEOC charge in December 2015 and became eligible to request a right-to-sue letter by June 2016," but did not obtain the notice until August 2023. (*Id.* at 7). Defendants argue that Plaintiff has not shown why she could not bring a lawsuit during that time. (*Id.*). Further, Defendants point to evidentiary and expectations-based prejudice

4

resulting from the delay. (*Id.* at 8–10).

"Laches is an equitable time limitation on a party's right to bring suit." *Boone v. Mech. Specialties Co.*, 609 F.2d 956, 958 (9th Cir. 1979). "The defense of laches requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Bratton v. Bethlehem Steel Corp.*, 649 F.2d 658, 666 (9th Cir. 1980) (internal quotations and citations omitted). The first element of laches, unreasonable delay, is met when the plaintiff "has offered no viable justification for the delay." *Romans v. Incline Vill. Gen. Improvement Dist.*, 658 F. App'x 304, 306 (9th Cir. 2016) (citation omitted). "Laches questions are seldom susceptible of resolution by summary judgment," because they usually require "evidentiary inquiry." *Bratton*, 649 F.2d at 666–67.

In the case of delays resulting during or after an EEOC investigation, the Ninth Circuit has found that laches bar a plaintiff's Title VII claims when the plaintiff chooses "to sleep on his rights." *Boone*, 609 F.2d at 959. In that case, the EEOC informed the plaintiff "that he could have a right-to-sue letter" and offered to assist him in bringing a lawsuit. *Id.* With no other explanation for his failure to initiate an action, the plaintiff's delay was found unreasonable. *Id.* However, the Ninth Circuit has determined that delay was not unreasonable when the plaintiff "did not deliberately delay seeking a right-to-sue letter" and "filed within ninety days of a valid right-to-sue letter." *Brown v. Cont'l Can Co.*, 765 F.2d 180, 815 (9th Cir. 1985). It is reasonable "for an aggrieved employee to allow the EEOC to retain jurisdiction over a Title VII action." *Gifford v. Atchison, Topeka, and Santa Fe Ry. Co.*, 685 F.2d 1149, 1152 (9th Cir. 1982) (citing *Boone*, 609 F.2d at 960).

In Plaintiff's controverting statement of facts in support of her Response to Defendants' Motion for Summary Judgment, she details the parties' participation in the long EEOC investigation process, including Defendants' submission of a Statement of Position, interviews with the EEOC investigator, and conciliatory efforts. (Doc. 85 at 15–18). In addition, Plaintiff submits that legal counsel advised her that the investigation process is lengthy, and that the EEOC "could bring a lawsuit . . . on her behalf" or "issue a

finding in her favor which could be used as evidence." (*Id.* at 15, ¶¶ 88–90). Based on these facts, it appears that Plaintiff did not "deliberately delay" seeking a right-to-sue letter from the EEOC. *Brown*, 765 F.2d at 815. Instead, she waited for the EEOC to finish its investigation. *See Gifford*, 685 F.2d at 1152 ("Ordinarily, if the EEOC retains control over a charge, a private plaintiff will not be charged with its mistakes."). Therefore, there are material issues of fact regarding the delay.

Defendants assert that they have been prejudiced by the delay because of lost evidence and memory as well as changed expectations surrounding remote work after the COVID-19 pandemic.[3] (Doc. 75-1 at 8–11). Further, Defendants argue that prejudice should be assessed "on a sliding scale: the longer the plaintiff delays in filing her claim, the less prejudice the defendant must show." *Smith v. Caterpillar*, 338 F.3d 730, 734 (7th Cir. 2003); (Doc. 75-1 at 8). The time between Plaintiff filing her EEOC charge and initiating this action was about eight years. However, Defendants still have not shown that delay was caused by any unreasonable conduct on Plaintiff's part. Therefore, despite any evidence of prejudice, the Court cannot determine as a matter of law that laches bar Plaintiff's claims, and Defendants are not entitled to summary judgment on this issue.

### B. Reasonable Accommodations

The ADA prohibits discrimination "against a qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a). "The ADA defines discrimination to include an employer's failure to make a reasonable accommodation." *Dunlap v. Liberty Nat. Prods., Inc.*, 878 F.3d 794, 799 (9th Cir. 2017) (citation and alteration omitted). "Whether an accommodation is reasonable 'depends on the individual circumstances of each case, and requires a fact-specific, individualized analysis of the disabled individual's

---

[3] In Defendants' Reply in support of their Motion for Summary Judgment (Doc. 88), Defendants ask the Court to take judicial notice of Bureau of Labor Statistics ("BLS") data regarding remote work and attach a BLS publication for the Court's consideration. (Doc. 88-2). Plaintiff asks the Court not to consider this argument or the publication because it is evidence submitted for the first time in a reply brief. (Doc. 90). For the reasons explained above, this evidence does not factor into the Court's analysis. Therefore, Plaintiff's Motion (Doc. 90) will be denied as moot.

circumstances and the potential accommodations.'" *Id.* (citing *Mark H. v. Hamamoto*, 620 F.3d 1090, 1098 (9th Cir. 2010)) (alteration omitted). Once the employer knows of the need for an accommodation, the employer must "'engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations' that will enable the employee to perform her job duties." *Id.* (citing *Humphrey v. Mem'l Hosp. Ass'n*, 239 F.3d 1128, 1137 (9th Cir. 2001)). "The interactive process requires communication and good-faith exploration of possible accommodations between employers and individual employees. . . . Both sides must communicate directly, exchange essential information and neither side can delay or obstruct the process." *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1114–15 (9th Cir. 2000), *vacated*, 535 U.S. 391 (2002).

Defendants do not dispute that Plaintiff is a qualified individual with a disability. (Doc. 75-1 at 11). The parties' Motions focus on whether Defendant BSI adequately engaged in the interactive process in response to Plaintiff's requests. Two accommodations requests are at issue here: Plaintiff's request in March 2015 for either a hybrid work schedule or an ergonomic chair and Plaintiff's request on July 31, 2015 for eight additional weeks of leave after her twelve weeks of FMLA leave.

### 1. March 2015 Request

As to the first request for accommodations, Defendants argue that BSI granted the accommodations by "purchasing the chair [Plaintiff] selected for $528.88." (Doc. 75-1 at 13). Further Defendants assert that "[w]hen a component [of the chair] was missing, BSI worked swiftly with the vendor and Plaintiff to resolve it." (*Id.*). Essentially, Defendants argue that BSI made a "good-faith effort to implement one of [Plaintiff's] chosen accommodations." (*Id.*). Plaintiff argues that Defendants did not meet the requirements under the law because "the only attempt Defendants made to meet their obligations was the belated attempt to provide an office chair that was delivered without the necessary lumbar support piece and, therefore, was ineffective." (Doc. 77 at 14).

"Employers that delay or obstruct the interactive process may fail to act in good faith, and they may thereby incur liability 'if a reasonable accommodation would have been

possible.'" *Anders v. Del Toro*, No. 22-35158, 2023 WL 2345054, at *1 (9th Cir. Mar. 3, 2023) (citing *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002)). However, "summary judgment is proper if the employer acted reasonably and in good faith." *Anders v. Braithwait*, No. 3:19-cv-5433 BHS-TLF, 2021 WL 5890852, at *4 (W.D. Wash. Sept. 20, 2021) (collecting cases where courts granted summary judgment in favor of the employer despite delays and lengthy accommodations processes), *aff'd*, *Anders*, 2023 WL 2345054 (9th Cir. Mar. 3, 2023).

Here, there is a dispute of fact regarding when, if ever, Plaintiff's accommodations requests were denied and if Defendant properly engaged in the interactive process. In response to Plaintiff's March 2015 request, HR asked Plaintiff to complete paperwork (Doc. 78 at 6, ¶ 36). Defendant BSI's HR manager then emailed Plaintiff on April 2, 2014 to "obtain specifications for an ergonomic chair," and Plaintiff responded with her selected ergonomic chair on April 6, 2015. (*Id.* at 7, ¶¶ 41, 43). Defendant BSI ordered the chair on April 8, 2015. (Doc. 76 at 5, ¶ 32). Defendant's HR employee also communicated with Plaintiff's medical provider to request additional information by email and phone. (Doc. 78 at 8, ¶¶ 45–46). Plaintiff asserts that on or around April 23, 2015, she talked to Dan Purtell about her accommodations requests "because she was in an increasing amount of pain" and he asked her if she was going to quit, leading Plaintiff to believe that BSI was not going to engage any further in the interactive process. (Doc. 78 at 8, ¶¶ 50–52). The chair arrived in late April (Doc. 76 at 6, ¶ 36), but it was missing a lumbar support component that Plaintiff requested. (Doc. 78 at 8, ¶ 49). On May 4, 2015, the HR Manager emailed Plaintiff and Plaintiff's supervisor about the accommodations request, stating that HR had "reached out to the vendor to obtain the status of this lumbar support." (Doc. 76 at 6, ¶ 37). The email also stated: "Since we do not have all of the necessary information from her doctor, we are unable to make a formal determination on the home based requirement." (*Id.* at 6–7, ¶ 37).

On May 11, 2015, Plaintiff requested, and was granted, FMLA leave. (Doc. 78 at 9, ¶¶ 56–57). Defendants assert that Defendant BSI worked "to obtain medical

information . . . during [Plaintiff's] 12 weeks of FMLA leave," particularly with respect to Plaintiff's ability to travel. (Doc. 86 at 6 (citing Doc. 75-7 at 2)). Defendants assert that "BSI never abandoned the interactive process" and "BSI and Plaintiff never reached an impasse where the company denied any accommodation request." (Doc. 86 at 15). On the other hand, Plaintiff asserts that when she used her FMLA leave, she believed that she "had not yet been granted any of her requested accommodations." (Doc. 77 at 14). There are genuine disputes of material fact regarding Defendant's response to Plaintiff's accommodations request. Therefore, summary judgment is not appropriate.

### 2. July 31, 2015 Request

Plaintiff also asserts that her request for extended leave after her FMLA leave expired constitutes a reasonable accommodation. (Doc. 77 at 15). She argues that Defendants failed to engage in the interactive process because BSI "made no good faith analysis of Plaintiff's request to determine if it would impose an undue burden or even considered her doctor's note as a request for accommodations under the ADA at all." (*Id.*). On the other hand, Defendants argue that the request for additional leave was unsupported, and "was tantamount to a request for indefinite leave," which is unreasonable as a matter of law. (Doc. 75-1 at 14).

"A leave of absence for medical treatment may be a reasonable accommodation under the ADA." *Humphrey*, 239 F.3d at 1135. "Even an extended medical leave, or an extension of an existing leave period, may be a reasonable accommodation if it does not pose an undue hardship on the employer." *Nunes v. Wal–Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir.1999). "Determining whether a proposed accommodation (medical leave in this case) is reasonable, including whether it imposes an undue hardship on the employer, requires a fact-specific, individualized inquiry." *Id.* A "recovery time of unspecified duration may not be a reasonable accommodation" when "then employee will not be able to return to his former position and cannot state when and under what conditions he could return to work at all." *Dark v. Curry Cnty.*, 451 F.3d 1078, 1090 (9th Cir. 2006). "In the summary judgment context, a court should weigh the risks and alternatives, including

possible hardships on the employer, to determine whether a genuine issue of material fact exists as to the reasonableness of the accommodation." *Nunes*, 164 F.3d at 1247.

There are disputed issues of fact surrounding the reasonableness of the accommodations request and whether BSI was required to engage in the interactive process in response. Defendants argue that an indefinite period of leave is, as a matter of law, unreasonable, citing *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1240 (9th Cir. 2012). In *Samper*, the employer "never quantified the number of additional unplanned absences she was seeking." *Id.* at 1239. But here, although Plaintiff extended her FMLA leave requests multiple times, the July 31, 2015 request was limited to a specific period of time, until October 1, 2015. (Doc. 76 at 10, ¶ 60). Moreover, Defendants have not argued that the extended period of leave would have created an undue burden. (*See* Doc. 75-1). Therefore, there is a triable issue of fact as to whether the request was reasonable. This genuine dispute of fact precludes summary judgment on either side.

**C. Retaliation**

"To establish a prima facie case of retaliation under the ADA, an employee must show that: (1) he or she engaged in a protected activity; (2) suffered an adverse employment action; and (3) there was a causal link between the two." *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 849 (9th Cir. 2004). "If the employee establishes a prima facie case, the employee will avoid summary judgment unless the employer offers legitimate reasons for the adverse employment action, whereupon the burden shifts back to the employee to demonstrate a triable issue of fact as to whether such reasons are pretextual." *Id.*

Plaintiff asserts that her request for additional, post-FMLA leave was a protected activity, and that her employment was terminated in retaliation for making the request. (Doc. 77 at 15–16). Indeed, "requesting a reasonable accommodation is protected activity." *Valenzuela v. Bill Alexander Ford Lincoln Mercury Inc.*, No. CV-15-00665-PHX-DLR, 2017 WL 1326130, at *4 (D. Ariz. April 11, 2017). Defendants argue that Plaintiff has failed to show a causal link between a protected activity and her termination. (Doc. 75-1 at 16). However, Plaintiff asserts that she was terminated "only a few days after she requested

additional leave for a definite period post-FMLA leave." (Doc. 77 at 15). This is sufficient to state a prima facie claim of retaliation. *See Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 507 (9th Cir. 2000) ("[W]hen adverse employment decisions are taken within a reasonable period of time after complaints of discrimination have been made, retaliatory intent may be inferred.").

Defendants also assert that BSI terminated Plaintiff for legitimate reasons, namely, that "she failed to return to work after her FMLA leave expired and declined a new position following the elimination of her original role." (Doc. 75-1 at 16; Doc. 86 at 16). Specifically, Defendants assert that while Plaintiff was on leave, her role was eliminated "as part of a company-wide restructuring," but Defendant BSI created a new role for Plaintiff and offered it to her "before her expected return on August 3, 2015." (Doc. 75-1 at 16). Defendants argue that Plaintiff did not accept the new position, so she was terminated when she did not return to work on August 3, 2015. (*Id.* at 17).

The burden shifts to Plaintiff to show pretext, and based on the evidence submitted by both parties, there is a triable dispute of fact. While Plaintiff was on leave, she was in communication with HR throughout May, June, and July of 2015. (Doc. 78 at 9, ¶¶ 58–61). After Defendant BSI's HR employee contacted Plaintiff on July 29, 2015 to offer her the new position and confirm her return to work, Plaintiff asked whether she would be fired if she did not return. (*Id.* at 10, ¶¶ 64–66). The HR employee told Plaintiff that they "would have to see what options 'we will have.'" (*Id.* ¶ 66). Plaintiff also argues that after she was terminated, she "did not receive any explanation why she was terminated, even after [she] promptly repeated her requests for reinstatement and accommodation." (Doc. 77 at 15). Based on the facts submitted by both parties, there is a genuine dispute of material fact about the reasons for Plaintiff's termination. Therefore, the Court will deny the parties' motions for summary judgment on this issue.

### IV.    CONCLUSION

In sum, summary judgment is not warranted on any of the issues raised by the parties. First, the Court cannot determine as a matter of law that Plaintiff's claims are barred

by laches. Second, there is a genuine dispute of material fact as to Plaintiff's reasonable accommodations claims and retaliation claim. These claims must be resolved at trial by a finder of fact. Therefore, Plaintiff's Motion and Defendants' Motion are both denied.

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. 75) is **denied**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Doc. 77) is **denied**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion that the Court disregard evidence and argument submitted for the first time in Defendants' Reply (Doc. 90) is **denied as moot**.

Dated this 20th day of February, 2026.

Honorable Steven P. Logan
United States District Judge